Mary Jo O'Neill, AZ Bar No. 005924
Rita Byrnes Kittle, CO Bar No. 17871
Megan K. O'Byrne, CO Bar No. 53327
Jillian Edmonds, NY Bar No. 5579024
**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
**Phoenix District Office**
3300 North Central Ave., Suite 690
Phoenix, Arizona 85012
Telephone: (602) 661-0060
Fax: (602) 640-5071
Email: mary.oneill@eeoc.gov
       rita.kittle@eeoc.gov
       jillian.edmonds@eeoc.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission, | CIVIL ACTION NO.: |
| Plaintiff, | **COMPLAINT** |
| vs. | **(JURY TRIAL DEMAND)** |
| Walmart, Inc., | |
| Defendant. | |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 and Title I of the Civil Rights Act of 1991, Bto Ms. Stevey Wiman. As alleged with greater

particularity below, Walmart failed to reasonably accommodate Ms. Wiman's disability and discharged her in violation of the ADA.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.§ 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Arizona.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant Walmart, Inc., a Delaware corporation, has continuously been doing business in the State of Arizona, and has continuously had at least 15 employees.

5. At all relevant times, Walmart has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12111(5), (7).

6. At all relevant times, Walmart has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, Stevey Wiman filed charge number 540-2018-01142 with the Commission alleging violations of the ADA by Defendant Walmart.

8. The Commission investigated Ms. Wiman's charge of discrimination.

9. On February 20, 2020, the Commission issued a Letter of Determination finding reasonable cause to believe the ADA was violated and inviting Walmart to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

10. The Commission engaged in communications with Walmart to provide it the opportunity to remedy the discriminatory practices described in the Letter of Determination.

11. The Commission was unable to secure from Walmart a conciliation agreement acceptable to the Commission.

12. On July 29, 2021, the Commission issued to Walmart a Notice of Failure of Conciliation.

13. All conditions precedent to the institution of this lawsuit have been fulfilled.

**GENERAL ALLEGATIONS**

14. Since at least August of 2017, Walmart has engaged in unlawful employment practices at its Bullhead City, AZ location, in violation of Sections 102(a), 102(b)(5)(A), and 102(b)(5)(B) of Title I of the ADA, 42 U.S.C. §§ 12112(a) and 12112(b)(5)(A)–(B).

15. Walmart is the largest grocery retailer in the United States.

16. Walmart operates stores in all 50 states, Puerto Rico, and the District of Columbia.

17. According to the company's website, Walmart employs over 1.6 million people in the United States.

18. Stevey Wiman is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).

19. Ms. Wiman has epilepsy, a physical impairment that substantially limits the major life activity of the operation of her body's neurological function.

20. Although Ms. Wiman takes medication to control her seizures, she still experiences seizures on a regular basis.

21. Ms. Wiman has had epilepsy since experiencing a traumatic brain injury as a child, which she suffered as a result of physical abuse.

22. On August 15, 2017, Walmart hired Ms. Wiman to work as a cashier at the Walmart store in Bullhead City, AZ.

23. When she was hired on August 15, 2017, Ms. Wiman immediately disclosed her epilepsy and seizures to Walmart's Training Coordinator Dina Sevianaugh.

24. Training Coordinator was a management position in human resources at the Walmart store in Bullhead City, Arizona.

25. Coordinator Sevianaugh worked in the personnel department at the Walmart store in Bullhead City, Arizona.

<u>Ms. Wiman's requests for accommodation</u>

26. In the same August 15, 2017 meeting where Wiman was hired, she informed Coordinator Sevianaugh about her need for reasonable accommodation due to her disability.

27. As a result of Wiman's request, Coordinator Sevianaugh provided her with a form to request an ADA accommodation.

28. Ms. Wiman completed a portion of the form and gave it to her doctor to provide additional information.

29. On the ADA accommodation form, Ms. Wiman's doctor estimated she would need time off from work due to her epilepsy between two to five times per month.

30. On November 13, 2017, Ms. Wiman submitted the completed ADA accommodation form.

31. On the ADA accommodation form, Ms. Wiman requested that she be allowed the following accommodations:

    a. to wear a helmet at work;

    b. to take extra breaks as needed for her seizures;

    c. excused absences as needed for her seizures; and

    d.   to have her therapy dog accompany her at work.

32. In November 2017, at the time of Ms. Wiman's requested accommodation, Walmart had a contract with Sedgwick Claims Management, Inc. to handle, among other things, employee requests for reasonable accommodation, FMLA leave, and other leaves of absence.

33. Before Walmart received Ms. Wiman's completed form requesting accommodation, Walmart allowed Ms. Wiman to wear a helmet to work.

34. In November 2017, Walmart's Personnel Coordinator Clarissa Sanchez, asked that Ms. Wiman wear a bicycle helmet instead of the motorcycle helmet she had been wearing.

35. Personnel Coordinator was a management position in human resources at the Walmart store in Bullhead City, Arizona.

36. Ms. Wiman agreed to wear the bicycle helmet that Walmart provided.

37. On November 15, 2017, Walmart sent Ms. Wiman a letter asking extensive questions about Ms. Wiman's request for her service dog.

38. After receiving the November 15, 2017 letter, Ms. Wiman withdrew her request to have her service dog at work, and informed Coordinator Sanchez that the request was withdrawn.

39. Walmart did not ask for any additional information from Ms. Wiman's doctor.

40. Walmart did not ask for further clarification of the doctor's request that Ms. Wiman be allowed 2-5 excused absences per month due to seizures.

<u>Walmart's attendance policy</u>

41. While Ms. Wiman was employed at Walmart, the company had an attendance policy where employees accumulated points for each absence or other attendance infraction.

42. In November 2017 the attendance policy required that employees who accumulated four points in their first six months be discharged.

43. Supervisors had authority to remove absence points that were charged for FMLA leave, other leaves of absence, "time off accumulated through work", bereavement leave, and other approved absences.

44. The attendance policy notes that "[a]uthorized absences" are "not considered part of [an] attendance record and will not result in disciplinary action."

45. Reasonable accommodation for disability is one of the reasons listed for authorized absences.

## Ms. Wiman's 4-month tenure at Walmart

46. During the four months Ms. Wiman was employed by Walmart, there was only one time when she missed a full day of work due to seizures.

47. Ms. Wiman missed part of her shift on other occasions when she was late to work or left early due to seizures.

48. On average, Ms. Wiman was unable to work her full shift less than twice per month due to seizures, consistent with what her doctor predicted.

49. Around October 18 or 19, 2017, Walmart informed Ms. Wiman that her absences due to seizures would no longer be excused under the company's attendance policy.

50. One of Ms. Wiman's supervisors, Assistant Store Manager Shari Obey, told Ms. Wiman that the corporate office felt she had too many absences.

51. Manager Obey also said the corporate office was threatening Ms. Wiman's supervisors and store management for excusing her absences.

52. After October 19, 2017, Ms. Wiman was no longer excused for any absences due to seizures other than on November 23, 2017, when she left work early due to a seizure.

53. Sometime between November 23, 2017 and December 1, 2017, Coordinators Sevianaugh and Sanchez met with Ms. Wiman and again informed her that Walmart would not be excusing any more unforeseen absences due to her seizures or hospitalizations.

54. Coordinators Sevianaugh and Sanchez also informed Ms. Wiman that she would not be allowed extra breaks or absences when she had seizures, because "if we treat you this way, we have to treat everyone this way."

55. Although Coordinators Sevianaugh and Sanchez effectively denied Ms. Wiman's requested accommodations, they did not propose or discuss any alternative potential accommodations for her disability.

56. Coordinator Sevianaugh told Ms. Wiman that a third party would process her reasonable accommodation form but did not tell her the name of the third party or explain the accommodation process.

57. The coordinators never explained to Ms. Wiman that she could apply for a leave of absence from Sedgwick.

58. Ms. Wiman did not know that she could go through Sedgwick to request a medical leave of absence.

59. Ms. Wiman was never contacted by Sedgwick about her request for accommodation.

60. All of Ms. Wiman's communication regarding her disability and requested accommodations went through Coordinators Sevianaugh and Sanchez at the Bullhead City, Arizona store.

61. On December 1, 2017, Assistant Store Managers Jared Ylitalo and Shari Obey informed Ms. Wiman that she was being fired due to an excessive number of absences.

62. At the time of her discharge, Ms. Wiman had a total of 13.5 points on her attendance record. Eight had been excused, leaving her with 5.5 total points being counted against her.

63. The only point on Ms. Wiman's record that was not related to her epilepsy was one point assessed when she was first hired and an unexcused absence that was the result of her confusion about the online schedule.

64. Throughout Ms. Wiman's employment with Walmart, her epilepsy-related absences were within the two-to-five absences per month range estimated by her doctor.

65. Ms. Wiman's supervisors were Assistant Store Managers Obey and Ylitalo.

66. Managers Obey and Ylitalo stated that Ms. Wiman was a good employee who performed her work well.

67. Ms. Wiman was rated as a "solid performer" in her performance review.

68. Ms. Wiman remains eligible for rehire by Walmart.

## FIRST CLAIM FOR RELIEF
### Failure to provide reasonable accommodation for disability
### (42 U.S.C. § 12112(b)(5)(A))

69. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

70. Ms. Wiman is a qualified individual with a disability, as defined in the ADA. 42 U.S.C. § 12102.

71. Ms. Wiman was qualified to hold the position of Cashier at Walmart's Bullhead City, Arizona store.

72. Ms. Wiman notified Walmart of her disability.

73. Ms. Wiman requested reasonable accommodations for her disability.

74. There were reasonable accommodations that would have allowed Ms. Wiman to perform the essential functions of her job as a cashier.

75. Specifically, as provided in Walmart's attendance policy, it could have continued to excuse Ms. Wiman's absences that were due to seizures as a reasonable accommodation for her disability.

76. Walmart denied Ms. Wiman's request that her absences due to seizures be excused.

77. Walmart rescinded its accommodation of excusing Ms. Wiman's absences.

78. At no time did Walmart engage in the interactive process to determine if there were accommodations other than excusing Ms. Wiman's disability-related absences that would have allowed Ms. Wiman to remain employed by Walmart.

79. Walmart denied Ms. Wiman's request that she be allowed additional breaks as necessary due to seizures.

80. Walmart discharged Ms. Wiman due to her disability-related absences and its refusal to accommodate her by excusing the absences related to her disability.

81. The effect of the practices complained of in the foregoing paragraphs has been to deprive Ms. Wiman of equal employment opportunities because of her disability, epilepsy, in violation of Sections 102(a) and 102(b)(5)(A) of the ADA, 42 U.S.C. §§ 12112(a) and (b)(5)(A).

82. The effect of the practices complained of in the paragraphs above has been to inflict emotional pain, suffering, and inconvenience upon Ms. Wiman and to deprive her of the financial and other benefits of working for Walmart.

83. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

84. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or reckless indifference to Ms. Wiman's federally protected rights.

**SECOND CLAIM FOR RELIEF**
**Disparate Treatment Based on Disability and/or the Need to Provide Accommodation**
**(42 U.S.C. §§ 12112(a) and (b)(5)(B))**

85. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

86. Ms. Wiman is a qualified individual with a disability, as defined in the ADA.

87. After denying Ms. Wiman's requested accommodations and rescinding its previous accommodation excusing absences related to her disability, Walmart discharged her on December 1, 2017.

88. Walmart discharged Ms. Wiman because of her disability, epilepsy, and/or because of the need to make reasonable accommodations for her disability.

89. The effect of the practices complained of in the foregoing paragraph has been to deprive Ms. Wiman of equal employment opportunities and otherwise adversely affect her status as an employee, because of her disability, epilepsy, in violation of Sections 102(a) and 102(b)(5)(B) of the ADA, 42 U.S.C. §§ 12112(a) and (b)(5)(B).

90. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

91. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to the federally protected rights of Ms. Wiman.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Walmart, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating against qualified individuals with disabilities by failing to reasonably accommodate qualified individuals with disabilities and/or by discharging qualified individuals with disabilities because of their disabilities.

B. Order Walmart to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Walmart to make whole Ms. Wiman, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to the rightful place hiring of Ms. Wiman, or front pay in lieu thereof.

D. Order Walmart to make whole Ms. Wiman by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain and suffering, in amounts to be determined at trial.

E. Order Walmart to pay Ms. Wiman punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

F. Grant such further relief as the Court deems necessary and proper in the public interest.

G. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Gwendolyn Young Reams
Acting General Counsel

Christopher Lage
Deputy General Counsel

*Mary Jo O'Neill*
Mary Jo O'Neill
Regional Attorney
3300 North Central Avenue
Suite 690
Phoenix, AZ 85012
(602) 661-0027
mary.oneill@eeoc.gov

*Rita Byrnes Kittle*
Rita Byrnes Kittle
Assistant Regional Attorney
950 17th Street
Suite 300
Denver, CO 80202
(720) 779-3639
rita.kittle@eeoc.gov

*Megan K. O'Byrne*
Megan K. O'Byrne
Trial Attorney
950 17th Street
Suite 300
Denver, CO 80202
(720) 779-3608
megan.obyrne@eeoc.gov

*Jillian Edmonds*
Jillian Edmonds
Trial Attorney
950 17th Street
Suite 300
Denver, CO 80202
(720) 329-0821
jillian.edmonds@eeoc.gov

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Phoenix District Office
3300 North Central Avenue
Suite 690
Phoenix, AZ 85012

**PLEASE NOTE**: For purposes of service upon the EEOC, it is sufficient that pleadings, notices, and court documents be served upon the Trial Attorneys. Duplicate service is not required on the General Counsel and Associate General Counsel in Washington, D.C.